# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

**Jefferson Hills Operating, LLC**
448 Old Clairton Road
Clairton, PA 15025

**Beaver Healthcare Operating, LLC**
616 Golf Course Road
Aliquippa, PA 15001

**Mulberry Healthcare Operating, LLC**
411 W. Mahoning Street
Punxsutawney, PA 15767

**Ridgeview Healthcare Operating, LLC**
30 4th Avenue
Curwensville, PA 16833

**Lakeview** Healthcare **Operating, LLC**
15 W. Willow Street
Smethport, PA 16749

**Scottdale Healthcare Operating, LLC**
900 Porter Avenue
Scottdale, PA 15683

*Plaintiffs*,

v.

**Guardian Healthcare OME Corp 99%
Holdco, Inc.**
8796 Route 219
Brockway, PA 15824

**Jefferson Hills Manor, LLC**
8796 RT 219,
Brockway, PA 15824

**Guardian Elder Care at Aliquippa, LLC**
8796 RT 219,
Brockway, PA 15824

CIVIL ACTION No:  1:23-cv-198

**Mulberry Square Elder Care and Rehabilitation Center, LLC**
RT 219 Brockway/Dubois Rd
Box 240
Brockway, PA 15824-0

**Curwensville Nursing Home, LLC**
8796 RT 219,
Brockway, PA 15824

**Lakeview Senior Care and Living Center, LLC**
RT 219 Brockway/Dubois Rd
Box 240
Brockway, PA 15824-0

**Scottdale Manor Rehabilitation Center, LLC**
8796 RT 219
Brockway, PA 15824

**Guardian Healthcare, Inc.**
2792 Egypt Road
Audubon, PA 19403

*Defendants*

## **COMPLAINT**

Plaintiffs Jefferson Hills Operating LLC, Beaver Healthcare Operating LLC, Mulberry Healthcare Operating LLC, Ridgeview Healthcare Operating LLC, Lakeview Healthcare Operating LLC, and Scottdale Healthcare Operating LLC, by and through their attorneys, Offit Kurman, P.C., for their Complaint against Defendants Jefferson Hills Manor, LLC, Guardian Elder Care at Aliquippa, LLC, Mulberry Square Elder Care and Rehabilitation Center, LLC, Curwensville Nursing Home, LLC, Lakeview Senior Care and Living Center, LLC, Scottdale Manor Rehabilitation Center, LLC Guardian Healthcare OME Corp 99%  Holdco, Inc., and

Guardian Healthcare, Inc., allege, on knowledge as to their own actions, and otherwise upon information and belief, as follows:

## PRELIMINARY STATEMENT

1.      This is a lawsuit arising out of the purchase of six nursing home Facilities (defined below) in Pennsylvania by the buyer Plaintiffs, wherein the seller Defendants have interfered with the Plaintiffs' ability to be paid for the services they provided to residents at the facilities during the transition period immediately post-sale while Medicare was approving the Change of Ownership ("CHOW") of the facilities from the Defendants to the Plaintiffs.  The only way Plaintiffs could be paid for the services it provided to Medicare and Medicare Advantage insured residents during the numerous months between closing and CHOW approval of all Facilities was through the cooperation of Defendants explicitly required by the Operations Transfer Agreement ("OTA") (defined below), whereby Plaintiffs bill the Medicare insurers for services rendered using Defendants' provider numbers.  The reimbursement for services is paid by the insurers to Defendants who in turn pay to Plaintiffs the reimbursements.  As of May 31, 2023, Defendants have provided services to Medicare-insured residents without reimbursement that amounts to approximately $784,899.00.  Defendants have interfered with Plaintiffs' ability to be paid for the services provided, and have also kept the reimbursement for 47 claims.

2.      Section 5.03(b) of the OTA expressly acknowledges that Plaintiffs would not have Medicare approvals as of the date of closing and permitted Plaintiffs to "provide services and bill patients under [Sellers'] provider numbers and provider agreements for Medicare . . . [and] collect accounts receivable resulting from such billing under [Sellers'] provider numbers and provider agreements."

3.     Defendants have collected funds from administrators of Medicare Advantage plans ("Medicare Advantage Insurers") for the services rendered by Plaintiffs at the Facilities, which Defendants refuse to pay to Plaintiffs.

4.     Defendants have also breached the OTA and a Guaranty (defined below) of the OTA, as well as interfered with Plaintiffs' contractual relations with Medicare Advantage Insurers, by upon information and belief, telling the Medicare Advantage Insurers not to process Plaintiffs' claims for reimbursement that were made post-closing and before approval of the CHOW for the Facilities.

5.     Defendants were aware at all relevant times that Plaintiffs could not bill Medicare Advantage Insurers for the services rendered post-closing and before the CHOW approval for each of the Facilities, as Plaintiffs would not have a provider number under which to bill Medicare Advantage Insurers until after CHOW approval for each of the Facilities.  For this reason, the OTA expressly permitted Plaintiffs to bill Medicare using Defendants' provider numbers and provider agreements for Medicare and collect such accounts receivable.  However, Plaintiffs did not bill using Defendants' provider agreements with Medicare Advantage Insurers and instead only used Defendants' provider numbers and Plaintiffs' provider agreements with Medical Advantage Insurers.

6.     As a result of Defendants' conduct, to date Plaintiffs have suffered in excess of $700,000 of harm.

## JURISDICTION

7.     This Court has jurisdiction over this action pursuant to 28 U.S.C. §1332(a)(3), in that this is a civil action between citizens of Pennsylvania and, upon information and belief, New York, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

## VENUE

8.      Venue is proper in this district under 28 U.S.C. §1391(b)(1), in that Defendants reside in this district and all Defendants reside in Pennsylvania and 28 U.S.C. § 1391(b)(2), in that a substantial part of the events or omissions giving rise to the claim occurred in this district, and 28 U.S.C. § 1391(b)(3), in that Defendants are subject to personal jurisdiction in this district with respect to this action, and there is no other district in which the action may otherwise be brought pursuant to the venue provision of the OTA.  The OTA contains a provision consenting to the venue of the United States District Court for the Western District of Pennsylvania.

## PARTIES

9.      Plaintiff, Jefferson Hills Operating LLC is a Delaware limited liability company, which has two members, Mordechai Zidele and Shaya Zidele, who are citizens of the state of New York.

10.     Jefferson Hills Operating LLC operates the Jefferson Hills Healthcare and Rehabilitation Center located at 448 Old Clairton Road, Clairton, PA 15025 (the "Jefferson Hills Facility").

11.     Plaintiff, Beaver Healthcare Operating LLC is a Delaware limited liability company, which has two members, Mordechai Zidele and Shaya Zidele, who are citizens of the state of New York.

12.     Beaver Healthcare Operating LLC operates the Beaver Healthcare and Rehabilitation Center located at 616 Golf Course Road, Aliquippa, PA 15001 (the "Beaver Facility").

13.     Plaintiff, Mulberry Healthcare Operating LLC is a Delaware limited liability company, which has two members, Mordechai Zidele and Shaya Zidele, who are citizens of the state of New York.

14.     Mulberry Healthcare Operating LLC operates the Mulberry Healthcare and Rehabilitation Center located at 411 Mahoning Street, Punxsutawney, PA 15767 (the "Mulberry Square Facility").

15.     Plaintiff, Ridgeview Healthcare Operating LLC is a Delaware limited liability company, which has two members, Mordechai Zidele and Shaya Zidele, who are citizens of the state of New York.

16.     Ridgeview Healthcare Operating LLC operates Ridgeview Healthcare and Rehabilitation Center located at 30 4th Avenue, Curwensville, PA 16833 (the "Ridgeview Facility").

17.     Plaintiff, Lakeview Healthcare Operating LLC is a Delaware limited liability company, which has two members, Mordechai Zidele and Shaya Zidele, who are citizens of the state of New York.

18.     Lakeview Healthcare Operating LLC operates Lakeview Healthcare and Rehabilitation Center and Lakeview Senior Care located at 15 W. Willow Street, Smethport, PA 16749 (the "Lakeview Facility").

19.     Plaintiff, Scottdale Healthcare Operating LLC is a Delaware limited liability company, which has two members, Mordechai Zidele and Shaya Zidele, who are citizens of the state of New York.

20.     Scottdale Healthcare Operating LLC operates the Scottdale Healthcare and Rehabilitation Center located at 900 Porter Avenue, Scottdale, PA 15683 (the "Scottdale Facility").

21.     Plaintiffs, Jefferson Hills Operating LLC, Beaver Healthcare Operating LLC, Mulberry Healthcare Operating LLC, Ridgeview Healthcare Operating LLC, Lakeview Healthcare Operating LLC, and Scottdale Healthcare Operating LLC are collectively referred to as the "Buyers" or "Plaintiffs".

22.     The Jefferson Hills Facility, the Beaver Facility, the Mulberry Facility, the Ridgeview Facility, the Lakeview Facility, and the Scottdale Facility are each a "Facility" and are collectively the "Facilities."

23.     Upon information and belief, Defendant Guardian Healthcare OME Corp. 99% Holdco, Inc. is a corporation that is incorporated the Commonwealth of Pennsylvania and has its principal place of business at 8796 Route 291, Brockway, PA 15824 (the "Guarantor").

24.     Upon information and belief, Defendant Jefferson Hills Manor, LLC is a Pennsylvania limited liability company with a registered address at 8796 Route 291, Brockway, PA 15824, who operated the Jefferson Hills Facility.  Upon information and belief, Defendant's members are citizens of the Commonwealth of Pennsylvania.

25.     Upon information and belief, Defendant Guardian Elder Care at Aliquippa, LLC is a Pennsylvania limited liability company with a registered address at 8796 Route 291, Brockway, PA 15824, who operated the Beaver Facility.  Upon information and belief, Defendant's members are citizens of the Commonwealth of Pennsylvania.

26.     Upon information and belief, Defendant Mulberry Square Elder Care and Rehabilitation Center, LLC is a Pennsylvania limited liability company with a registered address

at 8796 Route 291, Brockway, PA 15824, who operated the Mulberry Square Facility.  Upon information and belief, Defendant's members are citizens of the Commonwealth of Pennsylvania.

27.     Upon information and belief, Defendant Curwensville Nursing Home, LLC is a Pennsylvania limited liability company with a registered address at 8796 Route 291, Brockway, PA 15824, who operated the Curwensville Facility.  Upon information and belief, Defendant's members are citizens of the Commonwealth of Pennsylvania.

28.     Upon information and belief, Defendant Lakeview Senior Care and Living Center, LLC is a Pennsylvania limited liability company with a registered address at 8796 Route 291, Brockway, PA 15824, who operated the Lakeview Facility.  Upon information and belief, Defendant's members are citizens of the Commonwealth of Pennsylvania.

29.     Upon information and belief, Defendant Scottdale Manor Rehabilitation Center, LLC is a Pennsylvania limited liability company with a registered address at 8796 Route 291, Brockway, PA 15824, who operated the Scottdale Facility.  Upon information and belief, Defendant's members are citizens of the Commonwealth of Pennsylvania.

30.     Upon information and belief, Defendant Guardian Healthcare, Inc. is a corporation that is incorporated the Commonwealth of Pennsylvania and has its principal place of business at 2792 Egypt Road, Audubon, PA 19403.

31.     Defendants Jefferson Hills Manor, LLC, Guardian Elder Care at Aliquippa, LLC, Mulberry Square Elder Care and Rehabilitation Center, LLC, Curwensville Nursing Home, LLC, Lakeview Senior Care and Living Center, LLC, and Scottdale Manor Rehabilitation Center, LLC are referred to as the "Sellers".   The Sellers, together with the Guarantor and Guardian Healthcare, Inc. are referred to collectively as "Guardian" or the "Defendants."

# FACTS

## *The Parties' Contracts*

32.     On March 28, 2022, Plaintiffs, Sellers, and Guarantor entered into a series of agreements relating to the sale of the Facilities.

33.     On March 28, 2022, Plaintiffs and Sellers entered into the Operations Transfer Agreement ("OTA").  A true and correct copy of the OPA is attached as Exhibit "A."

34.     Guarantor executed a Guaranty to Plaintiffs dated June 30, 2022 (the "Guaranty") wherein it guaranteed Sellers' indemnification obligations under the OTA.  A true and correct copy of the Guaranty is attached as Exhibit "B."

35.     Pursuant to Section 5 of the Guaranty, "[i]n the event that Guarantor defaults in its obligations hereunder, all reasonable, documented out-of-pocket third party fees, costs and expenses incurred by the New Operators in enforcing this Guaranty will be included in the definition of "Losses" for purposes of calculating amounts due to New Operators under the OTA and this Guaranty."

36.     Pursuant to Section 5 of the Guaranty, Guarantor is liable to Plaintiffs for their attorneys' fees incurred in connection with this action that are paid to third-parties.

37.     The OTA addressed how Plaintiffs would be able to provide services to and be paid for those services between the date Plaintiffs began operating the Facilities and the date that each of the facilities received a formal CHOW approval from Medicare.

38.     Until each of the Plaintiffs' obtained CHOW approval for each of the Facilities from Medicare, the Facilities did not have their own provider number, also known as a National Provider Identifier ("NPI").

39.     Thus, as of the date Plaintiffs first provided services at the Facilities and until CHOW approval from Medicare, Plaintiffs were only able to bill Medicare and Medicare Advantage for their services provided to residents using Sellers' NPI numbers.

40.     Section 5.03(b) of the OTA states:

> Notwithstanding anything herein to the contrary, the Parties acknowledge and agree that New Operator is not expected to have received as of the Closing Date "tie in" notices or approvals from CMS for Existing Operator's Medicare provider agreements and may not have approvals from certain other applicable government payors with respect to participation and enrollment in Medicaid updated with New Operator's provider information. Accordingly, Existing Operator agrees that, to the extent permitted under applicable Law and by applicable Governmental Authorities and consistent with and specifically subject to the provisions of Section 7.02, New Operator is entitled, as of the Closing Date, to (1) provide services and bill patients under Existing Operator's provider numbers and provider agreements for Medicare, (2) subject to Section 7.02, collect accounts receivable resulting from such billing under Existing Operator's provider numbers and provider agreements.

### *Defendants' Conduct Post-Closing*

41.     Plaintiffs began operating the Facilities on or about June 30, 2022 (the "Closing Date").

42.     On September 6, 2022, Guardian's VP of Revenue Cycle Management, Lisa Vervoort sent an email to Plaintiffs' billing vendor, stating in relevant part:

> Per the OTA new operator only had permission to bill traditional Medicare.  Medicare Advantage and Commercial payer were not included.
> [Resident J.N.] was not a resident under Guardian DOS and therefor needs cancelled.
> As per Ms. Cartwright the above stands and payment will not be passed through DTDF.
> The site should have secured an OON authorization the day of CHOW.

43.     On September 28, 2022, Plaintiffs sent a demand letter to Defendants, attaching Lisa Vervoot's September 6, 2022 email and explaining that Guardian does not have permission to cancel any claims to Medicare Advantage because Section 5.03(b) of the OTA expressly permits Plaintiffs to "provide services and bill patients under Seller's provider numbers and provider agreements with Medicare".  A true and correct copy of the September 28, 2022 demand letter with exhibit (with resident name redacted) is attached as Exhibit "C."

44.     The September 28, 2022 demand letter further explained that Medicare Advantage is a part of Medicare and the OTA does not distinguish between Medicare and Medicare Advantage.

45.     The September 28, 2022 demand letter exercised Plaintiffs' rights to indemnification from the Sellers and Guarantor pursuant to Section 8.04 of the OTA.

46.     On October 14, 2022, Defendants responded in writing to the September 28th demand letter, stating in relevant part:

> You are correct that Section 5.03(b) of the OTA entitles New Operators to provide services and bill patients under Seller's provider numbers and provider agreements for Medicare, but only "to the extent permitted under applicable Law and by applicable Governmental Authorities." Medicare Advantage is a Medicare-approved plan from a private company. Like other commercial provider plans, Medicare Advantage plans are subject to negotiated agreements between the payor and the provider. Unfortunately, the Medicare Advantage agreements between Existing Operator and the applicable providers prohibit assignment of those agreements and further prohibit billing of claims by or on behalf of New Operators using Existing Operators' provider numbers. As a result, failure to do so does not constitute a breach of Existing Operators' obligations under the OTA.

47.     Defendants claim that "Law" and "Governmental Authorities" do not permit Plaintiffs to bill patients under Defendants' provider numbers and provider agreements with Medicare.

48.     The OTA defines "Law" as meaning "any federal, state or local law, treaty, statute, ordinance, code, rule, regulation, judgment, decree, order, writ, award, injunction or determination of a Governmental Authority." *See* Exhibit "A," § 1.01.

49.     The OTA defines "Governmental Authorities" as meaning "any government or political subdivision or department thereof; any governmental, administrative or regulatory body, commission, board, bureau, agency or instrumentality; or, any court, arbitrator or alternative dispute resolution body, in each case whether federal, state or local." *Id.*

50.     Nothing in section 5.03 of the OTA excludes provider agreements Sellers entered into with Medicare Advantage Insurers.

51.     Defendants also claim that Plaintiffs cannot bill Medicare Advantage Insurers using its provider numbers because Defendants' agreements with Medicare Advantage Insurers are not assignable and prohibit Plaintiffs from billing using Defendants' provider numbers.

52.     Plaintiffs entered into their own provider agreements with each of the Medicare Advantage Insurers for services provided at the Facilities post-Closing.

53.     Plaintiffs only billed Medicare Advantage Insurers for services provided at the Facilities post-Closing seeking reimbursements under Plaintiffs' provider agreements with Medicare Advantage Insurers.

54.     Plaintiffs did not submit any bills to Medicare Advantage Insurers for services provided at the Facilities after Closing relying upon Defendants' provider agreements with Medicare Advantage Insurers.

55.     It is irrelevant whether Defendants' provider agreements with Medicare Advantage Insurers prohibited assignment, as Plaintiffs did not bill Medicare Advantage Insurers

for services provided at the Facilities post-Closing using Defendants' provider agreements with Medicare Advantage Insurers.

56.     Thus, the terms of Defendants' provider agreements with Medicare Advantage Insurers is a red herring.

57.     Pursuant to Section 5.03 of the OTA, Plaintiffs were entitled to bill Medicare Advantage Insurers for services provided by Plaintiffs at the Facilities post-Closing under Plaintiffs' provider agreements with the Medicare Advantage Insurers using Defendants' provider numbers until such time that Plaintiffs obtained their own provider numbers for the Facilities.

58.     Upon information and belief, Defendants contacted Medicare Advantage Insurers and told them Plaintiffs did not have the right to bill for services provided at the Facilities post-Closing using Defendants' provider numbers.

59.     Upon information and belief, Defendants contacted Medicare Advantage Insurers and told them they should not approve any bill from Plaintiffs for services provided at the Facilities post-Closing using Defendants' provider numbers.

60.     Upon information and belief, Guardian Healthcare, Inc.'s employees and/or agents were directly or indirectly engaged in the improper contacts with the Medicare Advantage Insurers.

61.     Defendants breached the OTA by, among other things, interfering with Plaintiffs' rights under Section 5.03 (b) of the OTA to "provide services and bill patients under Existing Operator's provider numbers and provider agreements for Medicare."

62.     Defendants breached the OTA by interfering with Plaintiffs' rights under Section 5.03(b) of the OTA to "collect accounting receivable resulting from such billing under Existing Operator's provider numbers and provider agreements."

63.     Defendants do not have the right under the OTA to condition Plaintiffs' providing services and billing patients under Defendants' provider numbers on Medicare Advantage Insurers consenting to Plaintiffs' the use of Defendants' provider numbers.

64.     Nevertheless, in Defendants' October 14, 2022 letter, Defendants' unilaterally imposed these conditions upon Plaintiffs.

65.     Guarantor breached the Guaranty by, among other things, not providing prompt payment of Plaintiffs' claim for indemnification.

66.     Defendants' conduct in contacting Medicare Advantage Insurers that resulted in the non-payment of Plaintiffs' claims constitutes tortious interference with Plaintiffs' provider agreements with Medicare Advantage Insurers.

67.     Defendants caused Plaintiffs harm by collecting payments from Medicare Advantage Insurers for services rendered by Plaintiffs at the Facilities after Closing and refusing to pay such amounts to Plaintiffs.

68.     Defendants caused Plaintiffs harm by causing Medicare Advantage Insurers to refuse to pay for services rendered by Plaintiffs at the Facilities after Closing, for which neither Plaintiffs nor Defendants received payment.

69.     Plaintiffs continue to suffer harm relating to services provided at the Beaver Facility, as the Beaver Facility has still not obtained CHOW approval.  The only way to bill for services rendered to residents at the Facility insured by the Medicare Advantage Insurers is to

use the Sellers' provider numbers while billing under the Plaintiffs' provider agreements with each of the Medicare Advantage Insurers.

70.     Guarantor caused Plaintiff harm by breaching the terms of the Guaranty.

71.     Despite the lack of payment for services due to Defendants' conduct, Plaintiffs have continued to provide services and care to Facilities' residents.

## COUNT ONE – BREACH OF CONTRACT

### Against Sellers

72.     Plaintiffs repeat and reallege paragraphs 1 through 71 above, as if fully set forth herein.

73.     Plaintiffs and Sellers entered into the OTA, which is a binding contract supported by consideration.

74.     Plaintiffs performed all of their obligations under the Agreement.

75.     Sellers were obligated pursuant to the terms of the OTA to permit Plaintiffs to bill Medicare Advantage Insurers for services rendered by Plaintiffs at the Facilities after Closing using Defendants' provider number.

76.     The OTA required that Sellers permit Plaintiffs to bill Medicare Advantage Insurers using their provider numbers, as long as it was permitted under "Law" and by applicable "Governmental Authorities."

77.     Sellers were obligated pursuant to the terms of the OTA to permit Plaintiffs to bill Medicare Advantage Insurers for services rendered by Plaintiffs at the Facilities after Closing using Sellers' provider numbers that did not seek payment based upon any provider agreement Defendants had with Medicare Advantage Insurers.

78.     Sellers were obligated pursuant to the terms of the OTA to permit Plaintiffs to bill Medicare Advantage Insurers for services rendered by Plaintiffs at the Facilities after Closing using Sellers' provider numbers that only sought payment based upon Plaintiffs' provider agreements with Medicare Advantage Insurers.

79.     Sellers breached the OTA by, among other things, interfering with Plaintiffs' ability to bill and be paid by Medicare Advantage Insurers for services rendered by Plaintiffs at the Facilities after Closing.

80.     Sellers breached the OTA by conditioning use of their provider numbers for bills submitted to Medicare Advantage Insurers on obtaining written authorization from Medicare Advantage Insurers to use Sellers' provider numbers.

81.     Sellers breached the OTA by not permitting Plaintiffs to bill and collect accounts receivable from Medicare Advantage Insurers that were billed for services provided at the Facilities post-Closing using Sellers' provider numbers, as required by Section 5.03(b) of the OTA.

82.     Sellers' actions and inactions described herein breached the OTA, including but not limited to Section 7.06 of the OTA, as Sellers refused to use their reasonable best efforts for Plaintiffs to be paid for the services provided at the Facilities post-Closing by the Medicare Advantage Insurers and receipt of these payments was necessary to effectuate the transactions contemplated by the parties.

83.     Sellers' conduct described herein breached the OTA's implied covenants of good faith and fair dealing.

84.     Sellers breached the OPA by, among other things, upon information and belief, contacting Medicare Advantage Insurers and telling them Plaintiffs did not have the right to bill for services provided at the Facilities post-Closing using Defendants' provider numbers.

85.     Sellers breached the OPA by, upon information and belief, contacting Medicare Advantage Insurers and telling them they should not approve any bill from Plaintiffs for services provided at the Facilities post-Closing using Defendants' provider numbers.

86.     Sellers breached the OTA by accepting payments from Medicare Advantage Insurers for services rendered by Plaintiffs at the Facilities after Closing, but not paying the amounts to Plaintiff.

87.     Sellers' breaches of the OTA caused Plaintiffs to suffer harm and continue to cause Plaintiffs to suffer harm.

88.     By reason of the foregoing, Sellers are liable to Plaintiffs in an amount to be calculated, which is in excess of $700,000, plus interest, costs, fees, and such other relief the Court deems just.

WHEREFORE, Plaintiffs pray that judgment be entered in their favor and against Sellers in an amount not less than $75,000, as well as interest, costs, fees, and such other relief the Court deems just and proper.

## COUNT TWO – BREACH OF CONTRACT

## Against Guarantor

89.     Plaintiffs repeat and reallege paragraphs 1 through 88 above, as if fully set forth herein.

90.     Plaintiffs and Guarantor entered into the Guaranty which is a binding contract supported by consideration.

91.     Guarantor was obligated pursuant to the terms of the Guaranty to guaranty the prompt payment and performance of the Sellers' indemnification obligations under the OTA.

92.     Guarantor is liable to Plaintiffs for all of Sellers' breaches of their obligations under the OTA, plus Plaintiffs' reasonable out-of-pocket third party costs and expenses incurred in enforcing the Guaranty, which includes attorneys' fees.

93.     Guarantor breached its obligations under the Guaranty by failing to honor the terms of the Guaranty, including but not limited to paying Plaintiffs for the harm they suffered by Sellers' breaches of the OTA, despite demand by Plaintiff.

94.     Sellers were obligated pursuant to the terms of the OTA to permit Plaintiffs to bill Medicare Advantage Insurers for services rendered by Plaintiffs at the Facilities after Closing using Defendants' provider number.

95.     Guarantor's breaches of the Guaranty caused Plaintiffs to suffer harm and continue to cause Plaintiffs to suffer harm.

96.     By reason of the foregoing, Guarantor is liable to Plaintiffs in an amount to be calculated, which is in excess of $700,000.00, plus interest, costs, fees, and attorney's fees.

WHEREFORE, Plaintiffs pray that judgment be entered in their favor and against Guarantor in an amount not less than $75,000, as well as interest, costs, fees, and attorneys' fees and such other relief the Court deems just and proper.

## COUNT THREE – UNJUST ENRICHMENT

### Against Sellers

97.     Plaintiffs repeat and reallege paragraphs 1 through 97 above, as if fully set forth herein.

98.     In the alternative, Sellers were unjustly enriched by collecting sums from Medicare Advantage Insurers and not paying such amounts to Plaintiffs.

99.     Plaintiffs conferred a benefit upon Sellers by billing Medicare Advantage Insurers for services Plaintiffs provided at the Facilities post-Closing, using Sellers' provider numbers.

100.     Sellers received payments from the Medicare Advantage Insurers for services Plaintiffs provided at the Facilities after the date of closing, using Sellers' provider numbers.

101.     Sellers were paid for 47 claims submitted to the Medicare Advantage Insurers, in an amount Sellers have not disclosed.

102.     Sellers' acceptance and retention of such amounts under the circumstances would be inequitable without payment of the value of such services to Plaintiffs.

103.     As a result of Sellers' conduct, Plaintiffs suffered harm and continue to suffer harm.

104.     By reason of the foregoing, Sellers are liable to Plaintiffs in an amount to be determined, plus interest, costs, fees, and attorney's fees.

WHEREFORE, Plaintiffs pray that judgment be entered in their favor and against Sellers in an amount not less than $75,000, as well as interest, costs, fees, and such other relief the Court deems just and proper.

## COUNT FOUR – TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONS

### Against All Defendants

105.     Plaintiffs repeat and reallege paragraphs 1 through 104 above, as if fully set forth herein.

106.    Upon information and belief, Defendants contacted the Medicare Advantage Insurers and told them that Plaintiffs were not authorized to bill for services provided at the Facilities post-Closing using Defendants' provider numbers.

107.    Upon information and belief, Defendants contacted the Medicare Advantage Insurers and told them that they should not process Plaintiffs' bills with Defendants' provider numbers for services provided at the Facilities post-Closing.

108.    Plaintiffs entered into separate provider agreements with each of the Medicare Advantage Insurers.

109.    Upon information and belief, Defendants were aware that Plaintiffs had entered into separate provider agreements with each of the Medicare Advantage Insurers.

110.    Upon information and belief, Defendants' intended to interfere with Plaintiffs' provider agreements with the Medicare Advantage Insurers.

111.    Defendants' conduct was not privileged.

112.    Defendants' conduct caused Plaintiffs to suffer harm and continues to cause Plaintiffs to suffer harm.

113.    Upon information and belief, if Defendants had not contacted the Medicare Advantage Insurers as described above, the Medicare Advantage Insurers would have paid each of Plaintiffs' claims in full.

114.    By reason of the foregoing, Defendants are liable to Plaintiffs in an amount to be calculated in excess of $700,000, plus interest, costs, fees, and such other relief the Court deems just.

WHEREFORE, Plaintiffs pray that judgment be entered in their favor and against Defendants in an amount not less than $75,000, as well as interest, costs, fees, and attorneys' fees and such other relief the Court deems just and proper.

Dated:  June 27, 2023

Respectfully Submitted:

*/s/* Maggie M. DiCostanzo
Maggie M. DiCostanzo, Esq.
Pa. Attorney ID No. 86305
Offit Kurman
240 North 3rd Street
Payne Shoemaker Building, 11th Floor
Harrisburg, Pa. 17101
Telephone 717.980.3142
maggie.dicostanzo@offitkurman.com
*Attorneys for the Plaintiffs*

Ryan N. Boland, Esq.
Pa. Attorney ID No: 202977
Offit Kurman
1801 Market Street, Suite 2300
Philadelphia, PA  19103
Telephone  267.338.1312
Fax  267.338.1335
rboland@offitkurman.com
(*Admission to WDPA pending
September 6, 2023 ceremony*)
*Attorneys for the Plaintiffs*

4890-9744-4716, V. 1